Case 6:23-cv-00038   Document 41   Filed on 08/16/24 in TXSD   Page 1 of 15

United States District Court
Southern District of Texas
**ENTERED**
August 19, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| ESEQUIEL OCHOA, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 6:23-CV-00038 |
| | § | |
| BOBBY LUMPKIN, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM AND RECOMMENDATION

Petitioner Esequiel Ochoa is an inmate in the Texas Department of Criminal Justice ("TDCJ") and is incarcerated at the Stevenson Unit in Cuero, Texas. Proceeding *pro se*, Ochoa filed an original habeas corpus petition pursuant to 28 U.S.C. § 2254 on August 16, 2023. (D.E. 1). Liberally construed, Ochoa claims that prison officials violated his due process rights during disciplinary proceedings and that insufficient evidence supported his disciplinary conviction. Respondent filed a motion for summary judgment, to which Ochoa has responded.[1] (D.E. 35, 37). As discussed more fully below, it is respectfully recommended that Respondent's motion for summary judgment (D.E. 35) be **GRANTED** and Ochoa's § 2254 petition be **DENIED**. It is further recommended that a Certificate of Appealability ("COA") be **DENIED**.

---

[1] Ochoa's filing titled "Motion for Leave of Court to File Motion for Summary Judgment with Brief in Support" (D.E. 37, 37-1) was previously construed as a response to Respondent's motion for summary judgment. (*See* D.E. 40).

## I. JURISDICTION

Jurisdiction and venue are proper in this court because Ochoa is incarcerated at the Stevenson Unit in Cuero, DeWitt County, Texas, which is located in the Southern District of Texas. 28 U.S.C. §§ 124(b)(5), 2241(d); *Wadsworth v. Johnson*, 235 F.3d 959, 961-62 (5th Cir. 2000).

## II. BACKGROUND

### a. *Petition and Claims*

Liberally construed, Ochoa raises five claims regarding prison disciplinary case number 20230090688, in which he was charged with assault without injury. (D.E. 1 at 5-7). First, Ochoa contends that his due process rights were violated when he was not allowed to call witnesses at the disciplinary hearing or obtain an affidavit from a witness. (*Id.* at 6). Second, Ochoa alleges that there was insufficient evidence to find him guilty of the disciplinary charge because he did not assault an officer. (*Id.*). Third, Ochoa asserts that he was threatened with a retroactive application of Texas Code of Criminal Procedure article 37.10(b). (*Id.* at 7). Fourth, Ochoa claims that his good time credits were undeservedly taken away as a result of the disciplinary conviction. (*Id.*). Finally, liberally construed, Ochoa asserts that his due process rights were violated because the disciplinary action was motivated by coercion, conspiracy, or retaliation on the part of the prison because he was due for a parole consideration in May 2024. (*See id.* at 6-7).

### b.  *Disciplinary and Grievance Records*

On September 8, 2005, Ochoa was sentenced in two separate cases. (D.E. 35-1 at 2-8). In cause number 983043, Ochoa was charged with indecency with a child for an incident occurring on July 18, 1995. (*Id.* at 6). For this second-degree felony, Ochoa was sentenced to 40 years' imprisonment. (*Id.*). In cause number 1026778, Ochoa was charged with indecency with a child for an incident occurring on July 9, 2000. (*Id.* at 2). For this second-degree felony, Ochoa was again sentenced to 40 years' imprisonment. (*Id.*). The judge ordered the sentences to run concurrently. (*Id.* at 3, 7). Ochoa does not complain about his convictions, however, but instead challenges the results of a disciplinary hearing. (D.E. 1 at 5-7).

In January 2023, Ochoa was charged in a prison offense report with assaulting an officer without a weapon. (D.E. 34-1 at 5). Specifically, the report stated that Ochoa assaulted Corrections Officer Reynaldo Salas by grabbing his pen and striking his hand in the process. No injury occurred. The incident occurred when Salas asked Ochoa to move out of a doorway and, when Ochoa refused, Salas began to write him up. Ochoa then grabbed his pen and made contact with his hand. (*Id.*). During the preliminary investigation, Ochoa made no statement. (*Id.* at 6). During the subsequent investigation, Ochoa stated that he was squatted in the doorway putting slides under the door when Salas came downstairs very quickly. (*Id.* at 9). Salas "did [a] karate chop" directed at Ochoa, who backed away, and Salas then reached for his chest, which is when Ochoa contacted

his hand. Salas was escalating the situation. (*Id.*). Salas's statement during the investigation was consistent with his offense report. (*Id.* at 11).

At the disciplinary hearing on January 27, 2023, Ochoa pleaded not guilty to the charge. (*Id.* at 3, 13). Ochoa stated that his fight was not with the administration, but with the courts. He further stated that, during the incident, Salas was moving quickly and aggressively, and he almost hit Ochoa with his clipboard. Ochoa's hand brushed Salas's right hand, and Salas "said he got me." The disciplinary hearing officer found Ochoa guilty based on Salas's report and Ochoa's failure to present any non-frivolous evidence. Ochoa made no objections. As mitigation, Ochoa noted that he had a clear disciplinary record for 180 days. As a result of the conviction, Ochoa was reprimanded, had contact visitation suspended until May 2023, lost 45 recreation days, lost 50 commissary days, lost 30 days of telephone privileges, had cell restrictions for 45 days, lost tablet privileges for 30 days, had his line class reduced, and lost 300 days of good time. (*Id.*).

In his Step 1 grievance, Ochoa reiterated his version of the incident consistently with what he stated at the hearing, particularly asserting that Salas was the aggressor and used excessive force. (D.E. 1-1 at 1-2).[2] Ochoa requested that the case be removed from his record and his good time restored. (*Id.* at 2). The warden denied his grievance, stating that the disciplinary process procedures were followed, the punishment was within guidelines, and the evidence was sufficient to support a guilty verdict. (*Id.*). In his Step 2

---

[2] Ochoa's grievances are also available in D.E. 34-2. However, the copies that Ochoa attached to his petition are easier to read.

grievance, Ochoa raised the same argument. (*Id.* at 3, 5). He also argued that, in February 2023, he wanted to obtain an affidavit from another inmate regarding the incident but was told he should have done so at the hearing. (*Id.* at 5). His Step 2 grievance was denied because there was sufficient evidence to support the finding of guilty, no procedural errors were noted, and punishment was within guidelines. (*Id.*).

### III. DISCUSSION

####   a.   *Exhaustion*

In the motion for summary judgment, Respondent first argues that Ochoa's first, third, fourth, and fifth claims are unexhausted because he failed to raise them in his grievances. (D.E. 35 at 8-9). Moreover, Respondent contends that these claims are procedurally defaulted because Ochoa would not be able to raise them now. (*Id.* at 9). Respondent asserts that Ochoa has not shown either cause and prejudice for his failure to exhaust or that a fundamental miscarriage of justice would occur if his claims are not considered on the merits. (*Id.* at 9-10).

Liberally construed, Ochoa responds that he has demonstrated cause because he is acting *pro se* and did not know the rules and has shown that he would suffer actual prejudice if his claims are not considered on the merits. (D.E. 37 at 4). Ochoa otherwise reiterates the claims in his petition and contends that his due process rights were violated because the prison took steps to prevent him from presenting exculpatory evidence. (*Id.* at 5-12).

5

A state prisoner attacking a prison disciplinary hearing must exhaust the available administrative remedies before bringing the claims in a federal habeas petition. *Lerma v. Estelle*, 585 F.2d 1297, 1299 (5th Cir. 1978). To exhaust administrative remedies for disciplinary cases, prisoners are required to exhaust the TDCJ grievance procedure. *Gartrell v. Gaylor*, 981 F.2d 254, 258 n.3 (5th Cir. 1993). The TDCJ has a two-step grievance process, and "a prisoner must pursue a grievance through both steps for it to be considered exhausted." *Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004). Exceptions to the exhaustion requirement apply only where the available administrative remedies either are unavailable or wholly inappropriate to the relief sought, or where the attempt to exhaust such remedies would be futile. *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994). These exceptions only apply in extraordinary circumstances, and the petitioner bears the burden of demonstrating that administrative review is futile. *Id.*

Where a petitioner fails to exhaust his state remedies and any attempt to exhaust those state remedies would now be procedurally barred, those claims are procedurally defaulted. *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991). A Texas prisoner cannot file an application for a writ of habeas corpus in state court concerning alleged violations of prison disciplinary procedures. *Ex parte Brager*, 704 S.W.2d 46, 46 (Tex. Crim. App. 1986) (en banc), *disavowed on other grounds by Ex parte Alexander*, 861 S.W.2d 921 (Tex. Crim. App. 1993). "Procedural default of a federal claim in state court bars federal habeas review of that claim unless the petitioner can show 'cause' for the default and 'prejudice' attributable thereto, or demonstrate that failure to consider the federal claim will result in

6

a fundamental miscarriage of justice." *Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001) (internal citation and quotation marks omitted). "The fundamental miscarriage of justice exception to the rule that state procedural default bars federal habeas review is limited to cases where the petitioner can make a persuasive showing that he is actually innocent of the charges against him." *Id.*

Here, Ochoa did not properly exhaust his first, third, fourth, and fifth claims because, although he filed both Step 1 and Step 2 grievances, he did not raise his third, fourth, or fifth claims in either grievance, and he only raised his first claim in his Step 2 grievance. The only claim that Ochoa raised in both his Step 1 and Step 2 grievances was his insufficient evidence claim, which is the second claim in his current petition. (D.E. 1-1 at 1-3, 5). Ochoa did additionally claim in his Step 2 grievance that he sought to obtain an affidavit from another inmate who witnessed the incident, which makes up part of the first claim in his current petition, but he did not raise this claim in his Step 1 grievance. (*See id.*). In order to properly exhaust his claims, Ochoa was required to pursue them through both steps of the grievance procedure, not in only one step. *Johnson*, 385 F.3d 515.

Further, these four claims are procedurally defaulted because Ochoa would now be unable to exhaust them through the grievance procedure. Under TDCJ guidelines, an offender must file a Step 1 grievance within 15 days of the incident complained of,[3] and

---

[3] *See* TDCJ-CID, *Offender Orientation Handbook* (Feb. 2017), available at https://www.tdcj.texas.gov/documents/Offender_Orientation_Handbook_English.pdf.

Ochoa cannot raise a claim about prison disciplinary procedures in a state habeas application. *Brager*, 704 S.W.2d at 46. Finally, Ochoa has not provided any explanation for his failure to raise these claims in his grievances, and therefore has not shown any cause for his failure to exhaust. *Finley*, 243 F.3d at 220. Ignorance of the law, even for a *pro se* prisoner, does not establish cause. *See, e.g., Saahir v. Collins*, 956 F.2d 115, 118 (5th Cir. 1992). Similarly, Ochoa has not shown that a miscarriage of justice would occur should the federal court fail to consider his claims on the merits. *Id.* Accordingly, these four claims should be denied as unexhausted and procedurally defaulted.

      b.   *Due Process*

Respondent next argues that, to the extent that Ochoa's disciplinary conviction resulted in the loss of 45 recreation days, 50 commissary days, 30 days of telephone privileges, a suspension of contact visitation, cell restrictions for 45 days, loss of tablet privileges for 30 days, a reprimand, and a reduction in line class, those do not impact the fact or duration of his confinement and he cannot raise a cognizable constitutional claim on them. (D.E. 35 at 11-12). To the extent that Ochoa's claim is based on his eligibility for parole, Respondent argues that Texas parole statutes do not confer a liberty interest and therefore Ochoa cannot raise a cognizable constitutional due process claim regarding parole. (*Id.* at 12-13). Finally, Respondent argues that, while Ochoa lost good time credits that could affect his eligibility for mandatory supervision, Ochoa does not have a constitutional claim on that basis because he is ineligible for mandatory supervision anyway. (*Id.* at 15-17).

Liberally construed, Ochoa responds that he is eligible for mandatory supervision because he did not have two finalized second-degree felony convictions at the time he was convicted. (D.E. 37 at 3). Ochoa otherwise reiterates the claims in his petition and contends that his due process rights were violated. (*Id.* at 5-12).

In order to be granted a writ of habeas corpus, a petitioner must show that he is in custody in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a). The Supreme Court has described the limited instances in which a prison inmate can make out a claim that a liberty interest has been taken in a disciplinary proceeding without due process and acknowledged that, under certain circumstances, a state may create liberty interests that are protected by the Due Process Clause. *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995) (citing *Wolff v. McDonnell*, 418 U.S. 539, 94 (1974) and *Meachum v. Fano*, 427 U.S. 215 (1976)). However, the interests generally are limited to those which impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484.

The Court further noted that the punishment of incarcerated prisoners effectuates prison management and prisoner rehabilitative goals and that, while prisoners do not shed all constitutional rights at the prison gate, "'lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.'" *Id.* at 485 (quoting *Jones v. North Carolina Prisoner's Labor Union, Inc.*, 433 US. 119, 125 (1977), and *Price v. Johnston*, 334 U.S. 266, 285 (1948)). "Discipline by prison officials in response to a wide range of misconduct

falls within the expected perimeters of the sentence imposed by a court of law." *Id.* The touchstone of the inquiry into the existence of a protected, state-created liberty interest is the nature of the condition in relation to the ordinary incidents of prison life. *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005) (citing *Sandin*, 515 U.S at 484).

"[S]peculative, collateral consequences do not create constitutionally protected liberty interests." *Luken v. Scott*, 71 F.3d 192 (5th Cir. 1995) (*citing Meachum*, 427 U.S. at 229, n.8). "'Prisoners have no protectable property or liberty interest in custodial classifications.'" *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (citing *Whitley v. Hunt*, 158 F.3d 882, 889 (5th Cir. 1998)). *See also Malchi v. Thaler*, 211 F.3d 953, 959 (5th Cir. 2000) (holding that timing of inmate's release is too speculative to afford him a constitutionally cognizable claim to the right to a particular time-earning status, a right the Texas legislature has specifically denied creating).

In Texas, some inmates are entitled to early release under a mandatory supervision program in which a prisoner sentenced to the institutional division can serve the remainder of his term outside the prison, not on parole, but under the supervision and control of the pardons and paroles division. *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997) (citing Tex. Code Crim. P. art. 42.18 § 2(2)).[4] Prisoners earn good time credits that are added to their actual days served in prison to calculate their release date. Tex. Gov't Code § 508.147. The Fifth Circuit has determined that prisoners have a constitutional

---

[4] Currently located at Tex. Gov't Code § 508.001(5).

expectation of early release under the mandatory supervision program and therefore have a liberty interest with respect to their good time. *Malchi*, 211 F.3d at 957-958.[5] The mandatory supervision program in effect when Ochoa committed his July 2000 offense specified that a prisoner who was not on parole "shall" be released on mandatory supervision when his actual time served and accrued good time credit equaled the total term of his sentence. *See Ex parte Thompson*, 173 S.W.3d 458, 459 (Tex. Crim. App. 2005) (stating that the "statute in effect when the holding offense is committed determines an inmate's eligibility for release on mandatory supervision or parole"); Tex. Gov't Code § 508.147(a). In contrast to mandatory supervision, prisoners have no right or constitutional expectancy of early release on parole. *Madison*, 104 F.3d at 768.

Under the mandatory supervision statute in effect at the time Ochoa committed his July 2000 offense, any person serving a sentence for an offense under Texas Penal Code § 21.11 for indecency with a child was ineligible for release to mandatory supervision. Tex. Gov't Code § 508.149(a)(5) (2017).

Here, Ochoa cannot make out a due process cause of action because he has not shown a protectable liberty interest that was violated as a result of the disciplinary conviction. First, as to his reduction in line class, Ochoa has no protectable liberty interest in a particular custodial classification. *Harper*, 174 F.3d at 719. Specifically in the case

---

[5] The Fifth Circuit's holding applied to a previous version of the Texas mandatory supervision program, which has since been amended. *See Malchi*, 211 F.3d at 958. The Fifth Circuit has concluded that prisoners have a protected liberty interest under the amended version as well. *Teague v. Quarterman*, 482 F.3d 769, 776 (5th Cir. 2007).

of a line class designation, the Fifth Circuit has held that the timing of an inmate's release is too speculative to afford him a constitutionally cognizable claim to the right to a particular time-earning status. *Malchi*, 211 F.3d at 959. Thus, Ochoa cannot make out a due process claim based on his reduction in line class. Further, Ochoa's loss of various privileges including recreation days, commissary days, telephone privileges, a suspension of contact visitation, cell restrictions, and a loss of tablet privileges do not present an "atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." *See Sandin*, 515 U.S. at 484-87 (concluding that even placement in disciplinary segregation does not present a dramatic departure from the basic conditions of an offender's sentence). Similarly, to the extent Ochoa claims that the disciplinary conviction might affect whether he will be released on parole, there is no constitutional expectancy of parole in Texas. *Madison*, 104 F.3d at 768.

Finally, Ochoa could have a protectable liberty interest in his good time credits if he was eligible for mandatory supervision. *Malchi*, 211 F.3d at 957-958. However, he was ineligible for the program under the statute in effect at the time of his July 2000 offense. *See Thompson*, 173 S.W.3d at 459; Tex. Gov't Code § 508.149(a)(5) (2017). Specifically, Ochoa was convicted of indecency with a child for an incident occurring on July 9, 2000, and the statute at the time provided that any person serving a sentence for an offense under Texas Penal Code § 21.11 for indecency with a child was ineligible for release to mandatory supervision. (D.E. 35-1 at 2); Tex. Gov't Code § 508.149(a)(5)

(2017).[6] Ochoa's two 40-year sentences are running concurrently, he therefore is ineligible for release to mandatory supervision because he is serving a sentence under § 21.11, and he therefore has no protectable liberty interest arising from the loss of good time credits.

Accordingly, Ochoa has not established that he is in custody in violation of the Constitution, laws, or treaties of the United States, and his claims should be denied. 28 U.S.C. § 2254(a).

## IV. CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Ochoa has not yet filed a notice of appeal, the issue of whether he is entitled to a COA will be addressed. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (stating that a district court may *sua sponte* rule on a COA).

A COA "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

Where a district court rejects the constitutional claims on the merits, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

---

[6] This remains true under the current version of the mandatory supervision law. Tex. Gov't Code § 508.149(a)(5).

"A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327. Where a claim is dismissed on a procedural ground, a petitioner must show, "at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

Here, because reasonable jurists would not find it debatable that Ochoa failed to state a claim for a violation of a constitutional right, it is recommended that a COA be denied.

## V. RECOMMENDATION

Based on the foregoing, it is respectfully recommended that Respondent's motion for summary judgment (D.E. 35) be **GRANTED** and Ochoa's § 2254 petition be **DENIED**. In addition, it is further recommended that any request for a Certificate of Appealability be **DENIED**.

Respectfully submitted on August 16, 2024.

_____
Julie K. Hampton
United States Magistrate Judge

## **NOTICE TO PARTIES**

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).